# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

MICHAEL CASTRO,                    1:15-cv-02041-NLH-JS

            Plaintiff,             **OPINION**

        v.

ATLANTIC COUNTY, ATLANTIC
COUNTY PROSECUTORS OFFICE,
STATE OF NEW JERSEY, MULLICA
TOWNSHIP, et al.,

            Defendants.

---

**APPEARANCES**:

DOUGLAS L. CODY
CODY & CODY, ESQS.
653 WHITE HORSE PIKE
HAMMONTON, NJ 08037

MARTIN P. DUFFEY
COZEN AND O'CONNOR
LIBERTY VIEW BLDG.
457 HADDONFIELD RD
SUITE 300
CHERRY HILL, NJ 08002
     On behalf of Plaintiff

JAMES T. DUGAN
ATLANTIC COUNTY DEPARTMENT OF LAW
1333 ATLANTIC AVENUE
8TH FLOOR
ATLANTIC CITY, NJ 08401
     On behalf of Atlantic County Defendants

ROBERT J. MCGUIRE
NEW JERSEY OFFICE OF THE ATTORNEY GENERAL
25 MARKET STREET
P.O. BOX 116
TRENTON, NJ 08625
     On behalf of State of New Jersey Defendants

THOMAS B. REYNOLDS
REYNOLDS & HORN, P.C.
750 ROUTE 73 SOUTH
SUITE 202A
MARLTON, NJ 08053
     On behalf of Mullica Township Defendants

**<u>HILLMAN</u>, District Judge**

     This matter concerns constitutional and state law claims by Plaintiff arising out of his arrests and grand jury indictments for murder and other charges, all of which were ultimately dismissed. Presently before the Court are motions to dismiss by the State Defendants and Atlantic County. For the reasons expressed below, the State Defendants' motions will be granted in part and denied in part, and Atlantic County's motion will granted.

<b><u>BACKGROUND</u></b>

     Plaintiff, Michael Castro, was arrested on April 9, 2013 and indicted by the grand jury on July 3, 2013 for the February 5, 2012 murder of John Kingsbury in Mullica Township, Atlantic County, New Jersey. On June 30, 2014, the New Jersey Superior Court granted Plaintiff's motion to dismiss the indictment, finding that the Grand Jury did not have "an entirely accurate presentation of the evidence in order to determine whether there was reason to believe that the crimes alleged were committed by [Castro]." After having been incarcerated for sixteen months,

Plaintiff was released from custody on August 8, 2014 because the Atlantic County Prosecutor's Office did not re-indict him within the 45-days afforded by the Superior Court.

On March 20, 2015, Plaintiff filed the instant case against the Atlantic County Prosecutor's Office (ACPO), Mullica Township, and Atlantic County, as well as numerous actors involved in the investigation of the Kingsbury murder, including the ACPO prosecutors, the ACPO investigators, and the Mullica Township police officer who assisted in the ACPO's investigation. On May 29, 2015, Plaintiff filed an amended complaint, and simultaneously filed a similar complaint in New Jersey Superior Court.

The APCO Defendants, hereinafter referred to as the State Defendants,[1] removed Plaintiff's state court complaint, which was later consolidated with this case. The State Defendants and Atlantic County filed motions to dismiss.[2]

While those motions were pending, on January 26, 2016, an Atlantic County Grand Jury again indicted Plaintiff on nine counts, including a count for the first-degree murder of Kingsbury. Pursuant to a warrant on indictment, Plaintiff was

---

[1] As discussed more in-depth below, when county prosecutors perform their law enforcement function, they act as agents of the State. Wright v. State, 778 A.2d 443, 462 (N.J. 2001).

[2] The motions were ultimately mooted by Plaintiff's filing of a second amended complaint.

arrested on January 27, 2016.  Plaintiff was released on
$250,000 bail.  On March 31, 2016, this Court administratively
terminated the case until Plaintiff's criminal case had reached
its final resolution.  (Docket No. 53.)

On February 22, 2017, Plaintiff filed a motion to dismiss
the second indictment.  A hearing on the motion to dismiss the
indictment was scheduled for May 25, 2017, but in advance of
that hearing, the ACPO moved to dismiss the case on its own
accord.  On May 23, 2017, the Atlantic County Superior Court
entered an Amended Order dismissing the indictment, discharging
the bail, and ordering the release of Plaintiff from custody.

The Court reopened the matter on May 31, 2017.  Plaintiff
filed a second amended complaint on September 11, 2017, while
again simultaneously filing an almost identical complaint in New
Jersey Superior Court.  The State Defendants removed that case,
which was then consolidated with this action.  The Mullica Hill
Township Defendants filed their answer on November 10, 2017, and
the State Defendants and Atlantic County moved to dismiss
Plaintiff's second amended complaint on November 13, 2017.

In his 219-page, 1159-paragraph second amended complaint,
Plaintiff alleges that Defendants willfully, recklessly, and
callously disregarded his rights under federal and state law by
blatantly ignoring evidence pointing to other suspects,
fabricating evidence and misrepresenting the actual facts

adduced through investigation, and failing to obtain and preserve critical evidence, including evidence that likely would have exculpated him and exposed third parties who actually committed or participated in the homicide.  Plaintiff has asserted nine counts for violations of his rights under the Fourth and Fourteenth Amendments of the U.S. Constitution, the New Jersey Civil Rights Act, and for the common law torts of false arrest, false imprisonment, malicious prosecution, civil conspiracy, negligence, intentional infliction of emotional distress, and negligent hiring.

The State Defendants have moved to dismiss Plaintiff's claims on numerous bases, but they primarily invoke several immunity doctrines to compel the dismissal of his complaint. Atlantic County moves to dismiss Plaintiff's claims because it argues that it had no involvement in the investigation and prosecution of Plaintiff.  Plaintiff has opposed both motions.

## DISCUSSION

### A.   Subject Matter Jurisdiction

This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

### B.   Standard for Motion to Dismiss

The State Defendants' motion to dismiss Plaintiff's claims based on various immunities is a challenge to this Court's

subject matter jurisdiction, and is therefore decided under

Federal Civil Procedure 12(b)(1).  <u>Cope v. Kohler</u>, 2015 WL

3952714, at *3 (D.N.J. 2015) (citing <u>Constitution Party of Pa.</u>

<u>v. Aichele</u>, 757 F.3d 347, 357–58 (3d Cir. 2014)).  Because

Defendants mount a facial attack on jurisdiction as opposed to a

factual attack, the Court accepts the allegations in the

complaint as true and utilizes the standard for dismissal under

Rule 12(b)(6), which also governs Atlantic County's motion to

dismiss.  <u>Id.</u> (citing <u>Constitution Party</u>, 757 F.3d at 357–59).

When considering a motion to dismiss a complaint for

failure to state a claim upon which relief can be granted

pursuant to Federal Rule of Civil Procedure 12(b)(6), a court

must accept all well-pleaded allegations in the complaint as

true and view them in the light most favorable to the plaintiff.

<u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005).  It is well

settled that a pleading is sufficient if it contains "a short

and plain statement of the claim showing that the pleader is

entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, a

plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a

cause of action will not do . . . ."  <u>Bell Atl. Corp. v.</u>

<u>Twombly</u>, 550 U.S. 544, 555 (2007) (alteration in original)

(citations omitted) (first citing <u>Conley v. Gibson</u>, 355 U.S. 41,

47 (1957); <u>Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.</u>,

40 F.3d 247, 251 (7th Cir. 1994); and then citing <u>Papasan v.</u>

<u>Allain</u>, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a
> court must take three steps. First, the court must
> "tak[e] note of the elements a plaintiff must plead to
> state a claim." Second, the court should identify
> allegations that, "because they are no more than
> conclusions, are not entitled to the assumption of
> truth." Third, "whe[n] there are well-pleaded factual
> allegations, a court should assume their veracity and
> then determine whether they plausibly give rise to an
> entitlement for relief."

<u>Malleus v. George</u>, 641 F.3d 560, 563 (3d Cir. 2011) (alterations

in original) (citations omitted) (quoting <u>Ashcroft v. Iqbal</u>, 556

U.S. 662, 664, 675, 679 (2009)).

A district court, in weighing a motion to dismiss, asks

"not whether a plaintiff will ultimately prevail but whether the

claimant is entitled to offer evidence to support the claim."

<u>Twombly</u>, 550 U.S. at 563 n.8 (quoting <u>Scheuer v. Rhoades</u>, 416

U.S. 232, 236 (1974)); <u>see also</u> <u>Iqbal</u>, 556 U.S. at 684 ("Our

decision in <u>Twombly</u> expounded the pleading standard for 'all

civil actions' . . . ."); <u>Fowler v. UPMC Shadyside</u>, 578 F.3d

203, 210 (3d Cir. 2009) ("<u>Iqbal</u> . . . provides the final nail in

the coffin for the 'no set of facts' standard that applied to

federal complaints before <u>Twombly</u>."). "A motion to dismiss

should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" <u>Malleus</u>, 641 F.3d at 563 (quoting <u>Twombly</u>, 550 U.S. at 570).

## C. **Analysis**

### 1. *State Defendants' Motion to Dismiss*

The State Defendants consist of:

- The Atlantic County Prosecutor's Office;

- James McClain, the Atlantic County prosecutor;

- John Maher, a Chief Assistant Prosecutor assigned to the Major Crimes Unit, who presented the first indictment against Plaintiff before a grand jury;

- Diane Ruberton, a Chief Assistant Prosecutor to the Major Crimes Unit, who presented the second indictment against Plaintiff before a grand jury;

- Darren Dooley, a member of the ACPO and a captain in the Major Crimes Unit who supervised the investigation of the Kingsbury murder;

- Bruce DeShields, a member of the ACPO and the chief of the Major Crimes Unit who supervised the investigation of the Kingsbury murder;

- Michael Mattioli, a member of the ACPO and a sergeant in the Major Crimes Unit who was the lead detective in the

investigation of the Kingsbury murder; and

- Joseph Rauch, a member of the ACPO and a detective
  assigned to the Major Crimes Unit who assisted in the
  investigation of the Kingsbury murder.

The assessment of Plaintiff's claims against these
Defendants must be broken down into two categories – (1) claims
for the violations of Plaintiff's rights under the U.S.
Constitution and the New Jersey Civil Rights Act, N.J.S.A. 10:6-
2(c), and (2) Plaintiff's other state law claims.

**(1)  Plaintiff's U.S. Constitution and
       NJCRA violation claims**

Plaintiff claims that the State Defendants violated his
right to be free from unlawful arrest and detention, false
imprisonment, and malicious prosecution without probable cause.
Plaintiff also claims that the State Defendants failed to
disclose exculpatory information as required under <u>Brady v.
Maryland</u> and thereby violated his rights to due process of law.
Plaintiff claims that these violations were perpetrated by the
investigators, with the knowledge and direction of the
prosecutors, who failed to properly supervise and train the
investigators.

Plaintiff has brought these claims pursuant to 42 U.S.C. §
1983, as well as the NJCRA, which was modeled after § 1983 and

is interpreted analogously with § 1983.[3]  Section 1983 provides

in pertinent part, "Every person who, under color of any

statute, ordinance, regulation, custom, or usage, of any State

or Territory, subjects, or causes to be subjected, any citizen

of the United States or other person within the jurisdiction

thereof to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable

to the party injured in an action at law, suit in equity, or

other proper proceeding for redress."

Constitutional claims may only be asserted against a

"person" and not the State.  Will v. Michigan Dept. of State

---

[3] "By its terms, of course, [§ 1983] creates no substantive
rights; it merely provides remedies for deprivations of rights
established elsewhere." City of Oklahoma City v. Tuttle, 471
U.S. 808, 816 (1985).  Thus, "[t]o establish a claim under 42
U.S.C. § 1983, [a plaintiff] must demonstrate a violation of a
right secured by the Constitution and the laws of the United
States [and] that the alleged deprivation was committed by a
person acting under color of state law." Moore v. Tartler, 986
F.2d 682, 685 (3d Cir. 1993).  Like § 1983, NJCRA is a means of
vindicating substantive rights and is not a source of rights
itself. Gormley v. Wood-El, 93 A.3d 344, 358 (N.J. 2014).
Because the NJCRA was modeled after § 1983, and creates a
private cause of action for violations of civil rights secured
under either the United States or New Jersey Constitutions, the
NJCRA is interpreted analogously to § 1983. See Norman v.
Haddon Township, 2017 WL 2812876, at *4 (D.N.J. 2017).
In contrast to § 1983, which provides remedies for the
deprivation of both procedural and substantive rights, N.J.S.A.
10:6-2(c), however, provides remedies only for the violation of
substantive rights. Tumpson v. Farina, 95 A.3d 210, 225 (N.J.
2014).  Because Plaintiff has alleged substantive violations of
his rights, both provisions provide potential vehicles for
relief.

<u>Police</u>, 491 U.S. 58, 71 (1989) (holding that neither a State nor its officials acting in their official capacities are "persons" under § 1983); <u>Roberts v. New Jersey Turnpike Authority</u>, 2016 WL 6407276, at *5 (N.J. Super. Ct. App. Div. 2016) (citations omitted) ("We affirm neither the State nor its officials acting in their official capacities are 'persons' under the [NJCRA]."); <u>Grohs v. Yatauro</u>, 984 F. Supp. 2d 273, 280 (D.N.J. 2013) (citing <u>Will</u>, 491 U.S. at 65-66) ("The state's sovereign immunity [] is preserved under Section 1983; a state is therefore not a "person" who may be sued under Section 1983.").

Several immunity doctrines govern Plaintiff's constitutional claims. The Supreme Court has recognized two kinds of immunity under § 1983 - absolute immunity and qualified immunity. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 807 (1982). Prosecutors - and other individuals serving in a similar capacity - are afforded absolute immunity for acts that are "intimately associated with the judicial phase of the criminal process," such as "initiating a prosecution and . . . presenting the State's case." <u>Yarris v. County of Delaware</u>, 465 F.3d 129, 135 (3d Cir. 2006) (quoting <u>Imbler v. Pachtman</u>, 424 U.S. 409, 431 (1976)). Absolute immunity does not extend, however, to a "prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings."

Id. (quoting Buckley v. Fitzsimmons, 509 U.S. at 273) (other citations omitted). "Ultimately, whether a prosecutor is entitled to absolute immunity depends on whether she establishes that she was functioning as the state's 'advocate' while engaging in the alleged conduct that gives rise to the constitutional violation," and in determining immunity, a court "must examine the nature of the function performed, not the identity of the actor who performed it." Id. (citing Buckley, 522 at 274) (other citation omitted).

When absolute immunity does not apply, a state actor may be afforded qualified immunity. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012). In order to determine whether a government official is entitled to qualified immunity, two questions are to be asked: (1) has the plaintiff alleged or shown a violation of a constitutional right, and (2) is the right at issue "clearly established" at the time of the defendant's alleged misconduct? Pearson v. Callahan, 555 U.S. 223, 236 (2009).

In addition to absolute immunity and qualified immunity, a specialized immunity is afforded to testimony before a grand jury. "[G]rand jury witnesses should enjoy the same immunity as

witnesses at trial.  This means that a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony."  Rehberg v. Paulk, 566 U.S. 356, 369-70 (2012).  "[T]his rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution."  Id. (further explaining, "[w]ere it otherwise, a criminal defendant turned civil plaintiff could simply reframe a claim to attack the preparation instead of the absolutely immune actions themselves").  Absolute immunity does not extend to all activity that a witness conducts outside of the grand jury room, however, and only qualified immunity has been afforded to law enforcement officials who falsify affidavits and fabricate evidence concerning an unsolved crime.  Id. (citations omitted).

As a primary matter, the State Defendants argue that Plaintiff's constitutional claims against the ACPO, which is considered to be the State, and against the individual Defendants acting in their official capacities, must be dismissed because they are not persons under § 1983 and the NJCRA.  Plaintiff does not appear to contest this point.  Plaintiff's constitutional claims against ACPO and the Individual Defendants in their official capacities will therefore be dismissed.

The State Defendants also argue that Plaintiff's claims against the prosecutors must be dismissed because they are entitled to absolute immunity. The State Defendants further argue that Plaintiff's claims against the investigators must be dismissed because they are entitled to absolute immunity once their roles shifted into the prosecution phase, and they are entitled to qualified immunity for their investigative duties.

### a. State Prosecutor Defendants

Plaintiff's claims, as currently pleaded, are insufficient to establish that the prosecutors' actions fell outside the scope of the protections of absolute immunity. With regard to Atlantic County Prosecutor McClain, Plaintiff alleges that McClain made the decision to twice initiate criminal charges against Plaintiff, apply for the warrants, and direct presentment to the grand jury. (Compl. 5.) Plaintiff also alleges that McClain, collectively with Chief Assistant Prosecutor Maher and Chief Assistant Prosecutor Ruberton, were regularly briefed by the investigators, actively provided advice and guidance to the investigators, were responsible for properly training and supervising, and failed in their duties to guard against and prevent the fabrication and use of false evidence, the tampering with physical evidence, and the withholding and suppression of exculpatory evidence. (Compl. 9, 1028-29, 1111.)

As for Chief Assistant Prosecutor Maher, the only other

allegations in Plaintiff's complaint against him concern his presentment of the first indictment to the grand jury, that he was disciplined by the ACPO for his conduct in connection with the investigation "and/or" prosecution of Plaintiff, and he, along with the investigators and Ruberton, failed to properly train, supervise and discipline the Investigator Defendants with regard to proper police practices. (Compl. 348, 1040, 1055).

Nothing more is claimed against First Assistant Prosecutor Ruberton, other than noting that along with McClain, she made the decision to direct the presentment of the second incitement to the grand jury, and she presented misleading testimony to the grand jury. (Compl. 5, 868, 895.)

Plaintiff's claims against McClain, Maher, and Ruberton fail for several reasons. First, most of their alleged activities concern the judicial phase of the criminal process, including their presentments before the grand jury, for which they are afforded absolute immunity.

Second, even if the Court were to accept that these Defendants engaged in investigatory activities as alleged by Plaintiff, those claims are conclusory and lack any specificity as to how each of these Defendants acted to violate Plaintiff's constitutional rights. Alleging that these Defendants collectively provided guidance to the investigators, failed to properly supervise their activities, and are responsible for the

investigators' failures in preserving and weighing evidence is not sufficient to state viable claims under § 1983 against each of them individually.  See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (explaining that to properly plead a claim against an individual government defendant in a civil rights action, the complaint must indicate how that defendant had personal involvement in the alleged wrongdoing, which can be shown through allegations of personal direction or of actual knowledge and acquiescence); see also Rose v. Bartle, 871 F.2d 331, 345 (3d Cir. 1989) ("The mere invocation of the catch-word 'investigatory' . . . cannot suffice . . . to forestall dismissal on immunity grounds."); id. (providing that absolute immunity extends to interviews conducted by prosecutors if done for use in the grand jury proceedings even if there are allegations that the prosecutors attempted to coerce the witnesses into committing perjury before the grand jury"); Yarris, 465 F.3d at 137 (providing that it is well settled that prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, so long as they did so while functioning in their prosecutorial capacity).

Finally, Plaintiff's general accusations against the prosecutors speak to the "numerous public policy considerations underlying" the need to afford absolute immunity to prosecutors:

[S]uits against prosecutors for initiating and conducting

prosecutions "could be expected with some frequency, for a
defendant often will transform his resentment at being
prosecuted into the ascription of improper and malicious
actions to the State's advocate"; lawsuits would divert
prosecutors' attention and energy away from their important
duty of enforcing the criminal law; prosecutors would have
more difficulty than other officials in meeting the
standards for qualified immunity; and potential liability
"would prevent the vigorous and fearless performance of the
prosecutor's duty that is essential to the proper
functioning of the criminal justice system." ... [T]here
are other checks on prosecutorial misconduct, including the
criminal law and professional discipline.

Yarris, 465 F.3d at 135 (citing Burns, 500 U.S. at 485–86

(citing Imbler, 424 U.S. at 425) (observing that without

absolute immunity, there would be "concern that harassment by

unfounded litigation would cause a deflection of the

prosecutor's energies from his public duties, and the

possibility that he would shade his decisions instead of

exercising the independence of judgment required by his public

trust").

    In short, the claims lodged by Plaintiff against the

prosecutors concern activities that are afforded absolute

immunity to suit, and the claims regarding activities that fall

outside of the absolute immunity protections are insufficiently

pleaded.  Consequently, Plaintiff's claims against the ACPO,

McClain, Maher, and Ruberton must be dismissed.[4]

_____

[4] The claims against ACPO and the prosecutors in their official
capacities will be dismissed with prejudice.  The claims against
the prosecutors in their individual capacities will be dismissed

### b.   State Investigator Defendants

The Investigator Defendants argue that Plaintiff's claims against them should be dismissed because they are entitled to absolute immunity for their testimony before the grand jury and in their roles in the prosecutorial process, and they are entitled to qualified immunity for their involvement in the investigation of the Kingsbury murder.

As with the Prosecutor Defendants, Plaintiff's claims against the Investigator Defendants in their official capacities must be dismissed.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).  Plaintiff's claims must also be dismissed for their grand jury testimony.  Rehberg v. Paulk, 566 U.S. 356, 369–70 (2012).

For Plaintiff's claims regarding their actions during the investigation and outside of their testimony before the grand jury, the Investigator Defendants argue that because probable cause supported the arrest and indictment of Plaintiff, those claims fail to establish any constitutional violation.  The Investigator Defendants argue that Plaintiff was a viable suspect based on numerous facts developed in the investigation including that Plaintiff: a) had a financial motive to commit

---

without prejudice.  Should Plaintiff obtain facts through discovery that provide a sufficient basis to reassert his claims against any of the prosecutors, Plaintiff may seek leave to amend his complaint pursuant to Fed. R. Civ. P. 15.

the crime; b) had access to the murder weapon; c) had knowledge of the residence where the crime occurred, and that a large amount of cash might be there; and d) owned a car similar to one witnesses saw in the area of the crime on several occasions around the time of the crime. The Investigator Defendants further argue that even though the investigation also revealed facts that could make other persons suspects (in place of, or in potential collaboration with Plaintiff), such facts do not negate the existence of probable cause for Plaintiff's arrest.[5]

The problem with the Investigator Defendants' argument is that it requires the Court to accept as true their bases for probable cause and ignore all the other factual allegations in Plaintiff's complaint. That is the complete opposite of how the Court must view Plaintiff's claims at this motion to dismiss stage. See, e.g., Collick v. William Paterson University, 2016 WL 6824374, at *1 (D.N.J. 2016) (citation omitted) ("It is not the Court's task on this motion [to dismiss] to determine whose account is more credible. Indeed, the opposite: for purposes of such a motion, the only issue before the Court now is whether the Complaint, if we assume its allegations are true, states a legal claim. Whether the allegations are true can be determined

---

[5] Defendants also argue that Plaintiff's contention that he has a right to a criminal investigation of his choosing is not a well-established right. The Court does not view Plaintiff's complaint to allege a Fourth Amendment violation on this basis.

only after the parties exchange discovery and the case is decided, either by summary judgment or trial.").

Specifically with regard to cases such as this one that involve claims for unlawful arrest, false imprisonment, and malicious prosecution, the qualified immunity analysis turns on whether the police officers reasonably but mistakenly concluded that probable cause existed to arrest, detain and initiate the criminal prosecution. Garlanger v. Verbeke, 223 F. Supp. 2d 596, 608 (D.N.J. 2002) (citing Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995)) (other citations omitted). "Because Defendants have raised the defense of qualified immunity in the context of a Rule 12(b)(6) motion to dismiss, the only facts upon which the Court can properly rely in determining the 'objective reasonableness' of Defendants' belief that probable cause existed to arrest, detain, and prosecute Plaintiff are those allegations of fact which are contained in the Amended Complaint." Id. Moreover, when accepting a plaintiff's allegations as true and affording him the benefit of all reasonable inferences that can be drawn therefrom, the question is whether "there is any set of facts [he] can prove that would support a denial of immunity." Id. (citing Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992)) (other citation omitted).

"Probable cause exists whenever reasonably trustworthy

information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). "A common sense approach must be taken to the issue of probable cause and a determination as to its existence must be based on the totality of the circumstances." Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 2000) (citations omitted).

Even though "there are easy cases where a complaint establishes that the officers possessed a set of facts, and that set of facts establishes probable cause as a matter of law," Collick, 2016 WL 6824374 at *1 (citing Baker v. Wittevrongel, 363 F. App'x 146, 150 (3d Cir. 2010) (finding amendment of complaint futile where arrest was based on facts sufficient to establish probable cause)), the question of probable cause is generally one for a jury, Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998); Stolinski v. Pennypacker, 772 F. Supp. 2d 626, 638 (D.N.J. 2011) (noting that probable cause is "a sufficiently fact-laden issue as to typically be a question for the jury"); cf. Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995) ("Because the qualified immunity doctrine provides the official with immunity from suit, not simply trial, the district court should resolve any immunity question at the

earliest possible stage of the litigation. When the material facts are not in dispute, the district court may decide whether a government official is shielded by qualified immunity as a matter of law." (citations omitted)).

In this case, Plaintiff has pleaded hundreds of facts when accepted as true cast doubt on the objective reasonableness of the conduct of Investigator Defendants Mattioli, Dooley, and DeShields in the Kingsbury investigation.[6] Such alleged facts against Mattioli include: (1) falsely characterizing the text messages; (2) falsely characterizing the evidence describing the unknown male seen in the neighborhood on the date of the homicide; (3) falsely describing witness accounts of a vehicle seen in the neighborhood; (4) failing to conduct any meaningful investigation of third parties; (5) falsely describing Plaintiff's alleged "access" to the weapon allegedly used in the homicide and that of others; (6) making false statements to prosecutors about whether Kingsbury's son's ex-wife was interviewed and withholding her interview and statements from prosecutors and the defense; (7) fabricating evidence by way of

---

[6] Plaintiff has pleaded sufficient facts against Mattioli, Dooley and DeShields, but not against Rauch. Plaintiff's complaint details Rauch's involvement in investigation, but he only challenges the legality of Rauch's actions regarding his grand jury testimony. (Docket No. 64 at 117, 146-195.) Rauch is immune from suit based on his testimony before the grand jury, and therefore Plaintiff's claims against him must be dismissed.

filing a false police report regarding his alleged contacts with a "video company" (that did not exist) in order to cover up and explain his suppression of exculpatory evidence; and (8) failing to preserve critical evidence.

Plaintiff's allegations against Mattioli's supervisors, Dooley and DeShields, include claims that if they had not failed to properly train and supervise Mattioli, such falsifications and errors would not have occurred. Plaintiff further alleges against Dooley and DeShields that they improperly allowed Mattioli's continued assignment within the Major Crimes Unit and participation in the investigation of the Kingsbury homicide, even while Mattioli participated in a personal and physically intimate relationship with a key witness in a homicide investigation. Plaintiff alleges that Mattioli was not formally disciplined for this breach of Department policy, but was reassigned to the Grand Jury Unit and out of Major Crimes. Even after reassignment, however, Plaintiff alleges that Dooley and DeShields continued to allow Mattioli to participate in the Kingsbury homicide, a decision that eventually led or contributed to both false and misleading testimony and the filing of a false police report by Mattioli.

These allegations, as well as the many others contained in Plaintiff's complaint, more than sufficiently satisfy the Twombly/Iqbal pleading standards for his constitutional claims

against the Investigator Defendants Mattioli, Dooley, and DeShields.[7] The Court cannot conclude as a matter of law at this time whether any of these Defendants are entitled to qualified immunity. Plaintiff's constitutional violation claims against the Investigator Defendants Mattioli, Dooley, and DeShields in their individual capacities may proceed.

**(3) Plaintiff's State Law Claims**

In addition to his § 1983 and NJCRA claims, Plaintiff asserts claims against all Defendants under New Jersey state law for the torts of false arrest, false imprisonment, malicious prosecution, civil conspiracy, negligence, and intentional

---

[7] The Court notes that Plaintiff's claims against Mattioli's supervisors, Dooley and DeShields, are pleaded collectively. Although this was a defect in Plaintiff's claims against the prosecutors, it is not with regard to Dooley and DeShields. While Plaintiff alleges that the prosecutors collectively provided guidance to the investigators, failed to properly supervise their activities, and are responsible for the investigators' failures in preserving and weighing evidence, those allegations, in addition to being asserted collectively, are suppositions unsupported by facts to suggest that the prosecutors actually did those things. Plaintiff's claims against Mattioli's supervisors are different for two reasons. First, it is plausible that Mattioli's supervisors would have had the responsibility for monitoring, guiding, and training him. Second, at the pleading stage and without the benefit of discovery, Plaintiff cannot be faulted for not knowing the precise supervisory actions or inactions of Mattioli's supervisors so that he could specifically attribute his allegations to Dooley and DeShields. If, through discovery, no evidence is produced to support Plaintiff's supervisory liability claims against Dooley or DeShields, those Defendants may make the appropriate motion.

infliction of emotional distress.  The State Defendants argue

that Plaintiff's state law claims must be dismissed because they

are entitled to sovereign immunity under the Eleventh Amendment.[8]

Plaintiff argues that the State Defendants waived their Eleventh

Amendment immunity by removing his two state court complaints to

this Court.

The Court finds that Plaintiff's state law claims should

not be dismissed because of the State Defendants' sovereign

immunity, but it is not because the State Defendants waived

their immunity by removing Plaintiff's state court cases.

When a state entity removes a case against it to federal court,

it waives its right to contest the federal court's authority to

hear the case.  Lapides v. Bd. of Regents of Univ. Sys. of

Georgia, 535 U.S. 613, 620 (2002).  This waiver only applies to

the jurisdictional aspects of sovereign immunity, however, and

not to the State's liability for the claims alleged.  Lombardo

v. Pennsylvania, Dept. of Public Welfare, 540 F.3d 190, 194 (3d

---

[8] The State Defendants present their sovereign immunity argument
as a catch-all to bar all of Plaintiff's claims.  In the
previous section discussing Plaintiff's constitutional claims,
the Court found that the State and the State Defendants in their
official capacities had not waived their Eleventh Amendment
immunity for those claims.  As discussed below, the State has
waived its Eleventh Amendment immunity for state law tort claims
in limited fashion as set forth by the New Jersey Tort Claims
Act.

Cir. 2008) ("We can discern two distinct types of state
sovereign immunity: immunity from suit in federal court and
immunity from liability."). In other words, "while voluntary
removal waives a State's immunity from suit in a federal forum,
the removing State retains all defenses it would have enjoyed
had the matter been litigated in state court, including immunity
from liability." Id. at 198. Here, there is no question that
the State Defendants removed Plaintiff's state court complaints
to this Court, but that act did not extinguish their sovereign
immunity to Plaintiff's claims against them.[9]

The New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 12-3, is
the statutory mechanism through which the New Jersey Legislature
effected a waiver of the State's sovereign immunity.[10] The NJTCA

---

[9] It is important to note that at the same time Plaintiff filed
his federal court complaints he filed duplicative state court
complaints. The State Defendants were already in the
jurisdiction of this Court when they removed – and then sought
to consolidate – Plaintiff's state court complaints. If
Plaintiff's argument that the State Defendants' removal waived
its Eleventh Amendment immunity were accepted, a state's
Eleventh Amendment immunity could be lost simply by a plaintiff
filing a duplicative complaint in both federal court and state
court in anticipation that the state would remove the state
court complaint to federal court to preclude parallel
litigation. A state's sovereign immunity from tort liability is
the general rule, D.D. v. University of Medicine and Dentistry
of New Jersey, 61 A.3d 906, 908 (N.J. 2013), and it cannot be
waived by such procedural gamesmanship.

[10] The State Defendants argue that Plaintiff's state law claims
should be dismissed because Plaintiff did not plead he complied
with the procedural requirements of the NJTCA, which are set
forth at N.J.S.A. 59:8-3 to -11. Relief from those requirements

26

provides for prosecutorial immunity by statute.  Small v. State,

2015 WL 1057840 at *5.  N.J.S.A. 59:3-8 provides: "A public

employee is not liable for injury caused by his instituting or

prosecuting any judicial or administrative proceeding within the

scope of his employment."  The provision is qualified by

N.J.S.A. 59:3-14(a): "Nothing in this act shall exonerate a

public employee from liability if it is established that his

conduct was outside of the scope of his employment or

constituted a crime, actual fraud, actual malice or willful

misconduct."  Bare allegations of malice, however, "'should not

suffice to subject government officials either to the costs of

trial or to the burdens of broad-reaching discovery.'"  Small,

2015 WL 1057840 at *5 (quoting Harlow v. Fitzgerald, 457 U.S.

---

is granted only in circumstances that are extraordinary.  D.D.,
61 A.3d at 922.  The State Defendants do not argue, however,
that Plaintiff failed to meet all of those requirements.  The
text of the NJTCA does not require that a plaintiff's compliance
with the statute must be pleaded in a complaint in order to
satisfy its procedural requirements.  Instead, compliance with
the NJTCA is an affirmative defense a defendant must aver in its
answer.  See, e.g., Henebema v. Raddi, 175 A.3d 190, 193 (N.J.
Super. Ct. App. Div. 2017) ("Public entities and public
employees have the burden [to plead] that they are immune from
suit," and "the consequence of failing to file an affirmative
defense" under the NJTCA may constitute a waiver of that
defense.  "That is so because waiver negates reliance on the
defenses.").  Without any argument that Plaintiff's notice under
the NJTCA is deficient, the Court will not dismiss his claims
because he did not plead compliance with the NJTCA in his
complaint.

800, 817–18 (1982)).

Thus, with regard to the Prosecutor Defendants, Plaintiff's state law claims against them fail for the same reasons as his constitutional claims. As pleaded, Plaintiff's collective and conclusory allegations of the Prosecutor Defendants' actions relative to the investigation and prosecution are insufficient to overcome the protections of their prosecutorial immunity.

As for the Investigator Defendants, the NJTCA provides, "A public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J.S.A. 59:3-3. "In ascertaining whether good faith immunity exists, the New Jersey Supreme Court opined that [a] public employee either must demonstrate objective reasonableness or that he behaved with subjective good faith." Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 445 (D.N.J. 2011) (citing Alston v. City of Camden, 773 A.2d 693, 703 (N.J. 2001)). This defense is not available, however, when a public employee is liable for false arrest or false imprisonment. N.J.S.A. 59:3-3.

"'The same standard of objective reasonableness that applies in Section 1983 actions also governs questions of good faith arising under the Tort Claims Act.'" Trafton, 799 F. Supp. 2d at 445 (quoting Wildoner v. Borough of Ramsey, 744 A.2d 1146, 1153 (N.J. 2000). Where the alleged tort and alleged constitutional violation arise out of the same conduct, and a

28

court concludes that a constitutional violation has not occurred because the public employee's actions were objectively reasonable, the NJTCA's good faith provision applies and bars prosecution of the tort claim. Id.

In this case, because Plaintiff has sufficiently pleaded his constitutional claims against the Investigator Defendants regarding their lack of objective reasonableness in their investigation of the Kingsbury murder, he has similarly sufficiently pleaded his state law claims against them because they arise out of the same alleged conduct.

Consequently, Plaintiff's state law claims against the Prosecutor Defendants will be dismissed, and the state law claims against the State and Investigator Defendants may proceed.[11]

---

[11] N.J.S.A. 59:2-2 explains the liability of the State for the acts of its employees:

a. A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances.

b. A public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable.

Under the NJTCA, the State may be held vicariously liable for the tortious actions of county prosecutors and their subordinates performed during the investigation, arrest, and prosecution of an individual. Wright v. State, 778 A.2d 443, 462 (N.J. 2001) (further explaining that the State may be required to indemnify and defend the county prosecutors and

***2.   Atlantic County's Motion to Dismiss***

Plaintiff claims that Atlantic County is liable for the actions of the ACPO Prosecutors and Investigators because they were negligent in hiring them, and it is therefore liable for their constitutional violations and state law torts.  Atlantic County has moved to dismiss Plaintiff's claims because the ACPO Defendants are considered state actors for whom Atlantic County has no legal responsibility.  Plaintiff counters that his claims against Atlantic County may stand regarding Atlantic County's administrative obligations, including the hiring of its employees in the prosecutor's office.

"Under New Jersey law, when county prosecutors and their subordinates perform law enforcement and prosecutorial functions, 'they act as agents of the State,' and the State must indemnify a judgment arising from their conduct."  Watkins v. City of Newark Police Department, 2018 WL 1306267, at *3 (D.N.J. 2018) (citing Hyatt v. Cty. of Passaic, 340 F. App'x 833, 836 (3d Cir. 2009) (quoting Wright v. State, 778 A.2d 443, 461–62, 464 (N.J. 2001)).  "In contrast, counties are liable for a county prosecutor's administrative tasks unrelated to their strictly prosecutorial functions, such as personnel decisions."

---

their subordinates for tortious conduct under the relevant provisions of the NJTCA).

Id. (citing Hyatt, 340 F. App'x at 836) (quoting Coleman v. Kaye, 87 F.3d 1491, 1499 (3d Cir. 1996)).

Here, Plaintiff does not appear to dispute that Atlantic County is not liable for the claims against the prosecutors and investigators that the State has assumed liability for. Plaintiff contends that his claims against Atlantic County for negligence in its personnel decisions regarding the hiring and retention of all the ACPO Defendants, and particularly Mattioli, may proceed because they relate to Atlantic County's administrative and personnel decisions.

Under New Jersey law, negligent hiring "'addresses the risk created by exposing members of the public to a potentially dangerous individual,' i.e., it focuses on the hiring decision and its downstream consequences." K.J. v. Greater Egg Harbor Regional High School District Board of Education, 2017 WL 6034144, at *3 (D.N.J. 2017) (quoting Di Cosala v. Kay, 450 A.2d 508, 515 (N.J. 1982)).  Negligent hiring under § 1983 addresses both the hiring decision and its downstream consequences, but a § 1983 plaintiff must also prove he suffered a deprivation of federal rights, in addition to proving fault and causation.  Id. (citing Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 405 (1997)).

The tort of negligent hiring under New Jersey law has two requirements:  (1)  "An employer will only be held responsible

for the torts of its employees beyond the scope of the employment where it knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons"; and (2) a "showing is that, through the negligence of the employer in hiring the employee, the latter's incompetence, unfitness or dangerous characteristics proximately caused the injury." Di Cosala, 450 at 516.

"'Under § 1983, a plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.'" Adams v. City of Camden, 461 F. Supp. 2d 263, 268-69 (D.N.J. 2006) (quoting Brown, 520 U.S. at 411). "[A] finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that this officer was highly likely to inflict the particular injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." Id. (quoting Brown, 520 U.S. at 412).

Here, Plaintiff alleges that Atlantic County was negligent in its hiring of the ACPO employees in general, and also

specifically with regard to Mattioli.  Plaintiff's claims are conclusory, however, without any factual support as to how Atlantic County had knowledge of the ACPO employees' incompetence or unfitness, and how it knew, should have known, or was deliberately indifferent to knowing about those employees' characteristics.  As observed in another case involving a negligent hiring claim against a county with regard to that county's prosecutor's office employee:  "The Complaint alleges no facts about the process by which [the prosecutor's office detective] was hired.  It identifies no warning signs in his background that a diligent search would have uncovered.  And it fails to allege that such facts, if uncovered, would have prevented a prudent employer from hiring [him].  The Federal Rules do not permit a party simply to claim that something is true in the hope that it might be.  Even allegations on information and belief (which these are not) require a good faith, diligent investigation."  Harvey v. County of Hudson, 2015 WL 9687862, at *10 (D.N.J. 2015).  The same holds true here.

The Court will therefore dismiss Plaintiff's claims against Atlantic County.  The dismissal will be without prejudice to Plaintiff's right under Federal Civil Procedure Rule 15 to seek leave to amend his complaint to reassert these claims if discovery reveals facts to support them.

## CONCLUSION

As a result of the foregoing:

- Plaintiff's claims under the U.S. Constitution and NJCRA against the State and all the State Defendants in their official capacities will be dismissed with prejudice.

- Plaintiff's claims under the U.S. Constitution and NJCRA against the Prosecutor Defendants in their individual capacities will be dismissed without prejudice.

- Plaintiff's claims under the U.S. Constitution and NJCRA against the Investigator Defendants in their individual capacities regarding their grand jury testimony will be dismissed with prejudice.

- Plaintiff's state law claims against the Prosecutor Defendants will be dismissed without prejudice.

- All of Plaintiff's claims against Defendant Rauch will be dismissed without prejudice.

- All of Plaintiff's claims against Atlantic County will be dismissed without prejudice.

- All of Plaintiff's claims against the Investigator Defendants in their individual capacities, except for claims arising from their grand jury testimony, will not be dismissed and may proceed.

An appropriate Order will be entered.[12]


Date: June 25, 2018                          s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

---

[12] The State Defendants request the Court order Plaintiff to file a third amended complaint because his current complaint is "gargantuan, unnecessarily prolix and repetitive." (Docket No. 88 at 33.) Even though Plaintiff's complaint is long and detailed, it is evident that the State Defendants received sufficient notice of Plaintiff's claims against them to respond, which is the purpose of Rule 8. Through this decision, Plaintiff's claims are significantly whittled down, and this Opinion provides a roadmap of where his claims stand at this point going forward. The Court will therefore not direct Plaintiff to file a third amended complaint.